OPINION OF THE COURT
Simons, J.
Petitioners appeal from orders confirming determinations that they have unlawfully discriminated against complainants.
It all started in 1973 when complainants Bertha Adler, Charlotte Arutt and Leslie Mayer, all interested in boating, sought to join petitioner United States Power Squadrons and one of its local squadrons, petitioners Hempstead Bay Power Squadron, Inc. (Arutt), Great Neck Power Squadron, Inc. (Adler), and Westchester Squadron, Inc. *407 (Mayer). Complainants met every criteria for membership, save one; they were females and membership was open to males only. Their applications were denied and these proceedings followed.
The State Division of Human Rights found that complainants had been unlawfully discriminated against because of their sex and its determinations were affirmed by respondent Human Rights Appeal Board. Petitioners then instituted these four proceedings pursuant to section 298 of the Executive Law seeking to reverse and vacate respondent’s orders. The Appellate Division confirmed the orders and dismissed the petitions. We now affirm.
Petitioners do not contest the determinations that they have denied membership to women because of their sex and substantial evidence supports the finding that they have. They contend they are not subject to the provision of the Human Rights Law because (1) they are not “placets] of public accommodation, resort or amusement” and (2) they are “distinctly private” clubs (see Executive Law, § 292, subd 9; § 296, subd 2, par [a]). They contend also that the statute as applied interferes with the constitutional rights of association and privacy of their members, that the remedy of the division is overbroad and they raise a number of procedural objections.
Petitioner United States Power Squadrons, founded 70 years ago, is a nonprofit, tax exempt, foreign corporation whose purposes include promotion of safety and skill in boating. It comprises over 650 local squadrons throughout the United States and Puerto Rico. Each local squadron is separately incorporated but is chartered by the United States Power Squadrons after proving it can conduct an education program approved by United States Power Squadrons. Local squadrons are grouped geographically into 33 districts which serve as liaisons between the squadrons and United States Power Squadrons. The current total membership is approximately 70,000.
Local squadrons have their own by-laws but are governed by the constitution and by-laws of United States Power Squadrons. These provide that “any male person 18 years of age or over, having sufficient nautical knowledge, *408 who is a citizen of the United States of America and who passes the prescribed examination” may join a local squadron and United States Power Squadrons. Petitioners Great Neck Power Squadron, Inc., Hempstead Bay Power Squadron, Inc., and Westchester Power Squadron, Inc., are located in New York. Pursuant to the constitution of United States Power Squadrons each conducts and offers free every year to the public, including women, a course in boating or piloting which is designed by the United States Power Squadrons. The course is advertised, it is sometimes offered as part of the adult education program of a local school district, and it is usually taught in public school buildings.
For many years, any man 18 or over who passed the examination for the basic boating course would be invited to become a member of United States Power Squadrons and the local squadron. The United States Power Squadrons’ membership manual at this time stated, “Ideally, every graduate of the Piloting Course should become an active member of USPS because [they] have shown an interest in boating education.” The official publication of United States Power Squadrons urged local squadrons to recruit new members immediately after grading the examination. Membership in the United States Power Squadrons is unlimited and increase of membership is strongly encouraged.
Nonmembers may take the basic boating course but the division found that in the past the advanced course has been reserved for members. Other advantages of membership include reduced rates on boat insurance, free admission to boat shows, discounts on nautical equipment and reduced rates for United States Power Squadrons publications. Members also have the right to fly a United States Power Squadrons flag which identifies them as capable boaters.
The State Division found that membership in United States Power Squadrons is extended to all males who pass the basic piloting course, that there is no plan or purpose of exclusivity other than sexual discrimination, that the actual potential membership in the Power Squadrons is more *409 public than private, and that the only real limitation to membership in the Power Squadrons is that the applicant be male. It concluded that petitioners’ refusal to accept women for membership violated subdivision 2 of section 296 of the Human Rights Law which prohibits discrimination on the basis of sex in public accommodations. To remedy this illegality, it ordered petitioners to discontinue their male-only membership, practices, to extend membership invitations to the female complainants and to submit annual statistical reports detailing the number of male and female members in the New York squadrons.
I
Under New York law, it is an unlawful discriminatory practice “for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, resort or amusement, because of the * * * sex * * * of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof” (Executive Law, § 296, subd 2, par [a]). Petitioners contend that they are not within the proscription of this statute because they are not an owner or similar person and they do not operate a place of public accommodation.
The statutory definitions are set forth in section 292. Subdivision 9 defines “place of public accommodation, resort or amusement” inclusively and illustratively, not specifically, and sets forth an extensive list of examples of places within the statute.[1] This definition has been expanded repeatedly over the years (compare L 1952, ch 285, *410 § 4, with L 1960, ch 779; see, also, L 1962, ch 370; L 1969, ch 388). Originally, it included the phrase “and it is intended hereby to limit the procedures and jurisdiction of the commission to such places”, but the phrase was deleted in 1960, a clear indication that the Legislature intended that the definition of place of accommodation should be interpreted broadly. It excludes from its terms schools supported by public funds and “any institution, club or place of accommodation which is in its nature distinctly private.”
The statutory language states two concepts, the idea of public accommodation in the broad sense of providing conveniences and services to the public, and the idea of place.
The division found that petitioners are within the statute because they extend accommodations, facilities and privileges to members of the public. In doing so, it examined petitioners’ goals and the several aspects of its activities, specifically the educational nature of the corporation and the extensive educational programs it offers to a large segment of the public. The evidence showed that petitioners offer courses in boat handling and safety at virtually all their locations to approximately 70,000 people a year. These are not incidental services but the principal function of the organization. Indeed, the ability to maintain an education program is a prerequisite of a new local squadron. Moreover, the United States Power Squadrons with its local squadrons has taken part in the annual boat show at the New York Coliseum, distributing to the public printed material describing United States Power Squadrons as a national educational organization whose backbone is its educational program, it promotes and takes part in National Safe Boating Week, it has taken part in offering the New York Young Boatmen’s Course; it has sponsored and prepared a television program on boating in conjunction with the State of Georgia and it makes appearances at *411 local schools. It also gives boating, fishing and tide reports on the radio. These widespread public activities to promote the Power Squadrons’ goals and to solicit public interest and participation in its courses are, as the division found, the equivalent of systematically offering a service or accommodation to the public and bringing petitioners within the statutory definition.
Petitioners also contend that they are not subject to the law because they do not operate from a fixed place of accommodation. Public accommodations are customarily supplied at fixed places, but not necessarily so. We define “place” as did the New Jersey court when construing similar statutory language. It is a term of convenience, not limitation (see National Organization for Women v Little League Baseball, 127 NJ Super 522, affd 67 NJ 320; see, also, New York Roadrunners Club v State Div. of Human Rights, 81 AD2d 519, affd on other grounds 55 NY2d 122; Matter of Walston & Co. v New York City Comm. on Human Rights, 41 AD2d 238; United States Jaycees v McClure, 305 NW2d 764 [Minn]). The statute itself suggests such an interpretation because it lists places of accommodations which have no fixed place of operation but supply their services at a variety of locations, e.g., travel and tour advisory services and public conveyances. The statute also applies to “establishments dealing with goods or services of any kind.” Analytically, such establishments may discriminate by denying goods and services without denying individuals access to any particular place, e.g., home delivery service or services performed in the customer’s home and mail order services.
The division found that petitioners conduct their activities at no fixed location but frequently at public schools and public buildings, they use public waterways, public parks and public marinas. It found that the place where petitioners’ meetings and activities occur was a “place” of public accommodation. We agree. The place of the public accommodation need not be a fixed location, it is the place where petitioners do what they do. The division’s interpretation and application of the statute was reasonable and consistent with the legislative mandate that the statute’s terms be interpreted liberally to accomplish its purpose *412 (Executive Law, § 300; see, also, City of Schenectady v State Div. of Human Rights, 37 NY2d 421, 428).
II
Petitioners contend alternatively that they are excluded from the operation of the statute because they are a private club.
The essence of a private club is selectivity in its membership. It must have a “ ‘plan or purpose of exclusiveness’ ” (see Tillman v Wheaton-Haven Recreation Assn., 410 US 431, 438; Sullivan v Little Hunting Park, 396 US 229, 236). Organizations which routinely accept applicants and place no subjective limits on the number of persons eligible for membership are not private clubs (Matter of Castle Hill Beach Club v Arbury, 2 NY2d 596). Moreover, the New York statutory exclusion is narrower than some (cf. US Code, tit 42, § 2000a, subd [e]). It does not refer simply to private clubs or establishments closed to the public but uses more restrictive language excluding from the statute’s provisions only clubs which are “distinctly private” (Executive Law, § 292, subd 9). We construe it strictly to promote its purposes (Executive Law, § 300).
Whether a place of public accommodation is a “distinctly private” club and therefore excluded from the operation of the statute is a question of fact (Matter of Castle Hill Beach Club v Arbury, supra), and petitioners have the burden of establishing entitlement to exclusion (McKaine v Drake Business School, 107 Misc 241, 243 [App Term]; Anderson v Pass Christian Isles Golf Club, 488 F2d 855, 857; Nesmith v Young Men's Christian Assn. of Raleigh, N. C., 397 F2d 96, 101). It is they who are familiar with the policies and practices of the club and have available the documents and records necessary to establish their claims. In determining the issue, the fact finder may consider whether the club (1) has permanent machinery established to carefully screen applicants on any basis or no basis at all, i.e., membership is determined by subjective, not objective factors; (2) limits the use of the facilities and the services of the organization to members and bona fide guests of members; (3) is controlled by the membership; (4) is nonprofit and operated solely for the benefit and pleasure of the members; and (5) *413 directs its publicity exclusively and only to members for their information and guidance (see Wright v Cork Club, 315 F Supp 1143, 1153; see, also, Kiwanis Club of Great Neck v Board of Trustees of Kiwanis Int., 52 AD2d 906, 909 [dissenting opn], affd 41 NY2d 1034).
As the division found, membership in petitioner is extended to all males who pass the basic piloting course, the actual and potential membership is more public than private and there is no plan or purpose of exclusivity other than sexual discrimination. It is also apparent that petitioners encourage and solicit public participation in their programs, courses and membership; they do not attempt to limit their services to members only, or to operate their programs solely for the benefit of squadron members. Nor do they direct publicity exclusively and only to the members for their information and guidance.
Moreover, there are other significant distinctions between petitioner and the usual private club which support the division’s determination. For example, petitioners have secured tax exemptions as nonprofit educational organizations and pay no taxes; dues and contributions paid to United States Power Squadrons or any of its chapters are tax exempt. Such exemption sets them apart from private clubs, which do pay taxes and whose dues and contributions are not deductible as contributions to educational organizations. Additionally, petitioners have relationships with the Federal Government and various State governments which are not wholly consonant with their claim to be distinctly private. Thus, they regularly assist the United States Government in revising nautical charts and keeping them up to date; they have entered into agreements with agencies of various State governments to teach courses for high school credit, to make an educational film for public television, and even to teach boating safety to inmates of a State prison. These special relationships with government officials in the field of boating safety also include liaisons with the National Coast Guard and with the Coast Guard Auxiliary[2] and United States *414 Power Squadrons, among other organizations, is authorized to act as an agent of the Department of Environmental Conservation in connection with education for boating safety under section 79 of the Navigation Law. While government membership as a class of membership in United States Power Squadrons was abolished May 5, 1974, representatives of government continue to attend meetings of United States Power Squadrons when invited.
These features of petitioners’ operation cannot be regarded as incidental because petitioners’ central purpose and reason for being — “boating safety through education” — has become over the years of their existence more and more affected with a public interest.
All this being so, petitioners do not come within the statutory exclusion (cf. Kiwanis Club of Great Neck v Board of Trustees of Kiwanis Int., 52 AD2d 906, affd 41 NY2d 1034, supra). They may be clubs in the sense that they are controlled by their membership and presumably have private membership meetings, but they are not “distinctly private”. A purely private club does more to make certain that desirables are admitted than simply exclude persons believed to be undesirable and its activities are conducted principally for its members, not the public.
Ill
It is much too late in the day to challenge the constitutionality of civil rights legislation generally (see People v King, 110 NY 418) but petitioners challenge the constitutionality of it as applied to them. It is their claim that the statute denies them rights of association and privacy guaranteed under the Federal Constitution (US Const, 1st Amdt). While private discrimination may be characterized as a form of freedom of association recognized under the amendment, “the constitution places no value on it” and petitioners are not entitled to affirmative protection to further their discriminatory practices (Norwood v Harrison, 413 US 455, 470). Petitioners recognize that our statute is a proper exercise of the State’s power and since the division found upon substantial evidence that petitioners come within its terms, they were subject to its provisions (see Railway Mail Assn. v Corsi, 326 US 88 [labor *415 union subject to New York Civil Rights Law]; United States Jaycees v McClure, 534 F Supp 766; cf. Jackson v Metropolitan Edison Co., 419 US 345; Moose Lodge No. 107 v Irvis, 407 US 163). Though nominally private, they are not exempt from the provisions of the Human Rights Law if they are not in fact private except for purposes of discrimination (see McCrary v Runyon, 515 F2d 1082, affd 427 US 160; Matter of Castle Hill Beach Club v Arbury, 2 NY2d 596, supra).
IV
We agree generally with the Appellate Division’s disposition of petitioner’s procedural objections but add these comments.
Petitioner United States Power Squadrons contends that it is a foreign corporation separate and distinct from local squadrons and it questions the power of the division to impose sanctions against it. United States Power Squadrons had sufficient presence in the State to subject it to the mandate of the division at the time of these proceedings because of the direction and control it exercised over the local squadrons and because of its activities in the State. It required local squadrons to comply with its rules when incorporating, when conducting power squadron activities, and in their membership practices. Thus, the national constitution and by-laws required that the by-laws of the local squadrons had to be approved by United States Power Squadrons and could not be amended without its approval. The boating courses were designed by the United States Power Squadrons, conducted with the regularity directed by it and with rules for admission which were uniform throughout the country. United States Power Squadrons established the requirements for membership and it had the power and authority to .expel individual members and to withdraw or revoke the affiliation of local squadrons at will. Indeed, the three local squadrons in these proceedings sought to admit women to membership but were unable to do so without losing their charters because all local members were required to be members of the United States Power Squadrons also. Furthermore, United States Power Squadrons was actually present in the State of New York insofar as its agents and representatives regularly came *416 into the State to participate in boat shows and other public and organizational activities and because the advertising office for its magazine, The Ensign, was located in New York City. An organization which assiduously seeks to enlarge its membership and which continuously and systematically promotes its corporate goals by such activities in this State, whether conducted by officers and agents of the United States Power Squadrons or by the officers of affiliates which it dominates and controls is transacting business in New York and is subject to its jurisdiction (CPLR 302, subd [a], par 1; International Shoe Co. v Washington, 326 US 310; United States Jaycees v McClure, 305 NW2d 764 [Minn], supra). In view of its presence and its relationship to the local squadrons, both the United States Power Squadrons and the local squadrons properly may be considered as “owner[s]” or similar persons offering a public accommodation within the broad sweep of the statutory language contained in subdivision 2 of section 296 of the Human Rights Law.
United States Power Squadrons makes a similar argument in asserting the remedy is overbroad, that the required membership policies should not be imposed on it, a foreign corporation, but should be limited to the public activities of the local squadrons. Section 298-a expressly provides that the provisions of the Human Rights Law shall apply against nonresidents or foreign corporations. Pursuant to the statute, the division could have excluded United States Power Squadrons from the State entirely (subd 3). That being so, we see nothing arbitrary or unreasonable in the division taking the intermediate step of fashioning a remedy requiring the United States Power Squadrons to comply with the provisions of our laws if it chooses to continue its activities here.
Petitioners also contend that the remedy was excessive as to the local squadrons. They note that they have made several changes in their rules and that women are now admitted to all public functions and excluded only as to membership. We deem those changes immaterial. On the facts in this record, it is not possible or practical to divorce the public activities of these clubs from their operation and management. The educational aspects of petitioners’ oper *417 ations are not isolated or incidental. They pervade the squadrons’ activities, both public and private, and complainants are entitled to share fully in them (cf. Kiwanis Club of Great Neck v Board of Trustees of Kiwanis Int., 52 AD2d 906, affd 41 NY2d 1034, supra; Batavia Lodge No. 196, Loyal Order of Moose v New York State Div. of Human Rights, 43 AD2d 807, mod 35 NY2d 143; Matter of New York Athletic Club of City of N. Y. v City Comm. on Human Rights, 56 Misc 2d 565). Without membership, complainants are denied the ability to participate in the governance of the national or local squadrons and to influence their policies and they are denied the “advantages, facilities and privileges” of a public accommodation (Executive Law, § 296, subd 2, par [a]).
Finally, we are not impressed with petitioner’s contention that its policies and rules were changed after the complaints were filed. The changes were not made to facilitate membership for women, but rather to tailor the operation of petitioner more closely to the paradigm of a private club after New Jersey courts found United States Power Squadrons in violation of its antidiscrimination laws (Hinden v United States Power Squadrons, NJ Super Ct, App Div, June 18, 1975, pet for certification den 69 NJ 382, app dsmd and cert den 426 US 943). The violations having been proved, the remedy was reasonable.
Accordingly, the orders of the Appellate Division should be affirmed, with costs to respondents.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler and Meyer concur.
Orders affirmed, with costs.

. “The term ‘place of public accommodation, resort or amusement’ shall include, except as hereinafter specified, all places included in the meaning of such terms as: inns, taverns, road houses, hotels, motels, whether conducted for the entertainment of transient guests or for the accommodation of those seeking health, recreation or rest, or restaurants, or eating houses, or any place where food is sold for consumption on the premises; buffets, saloons, barrooms, or any store, park or enclosure where spirituous or malt liquors are sold; ice cream parlors, confectionaries, soda fountains, and all stores where ice cream, ice and fruit preparations or their derivatives, or where beverages of any kind are retailed for consumption on the premises; wholesale and retail stores and establishments dealing with goods or services of any kind, dispensaries, clinics, hospitals, bath-houses, swimming pools, laundries and all other cleaning establishments, barber shops, beauty parlors, theatres, motion picture houses, airdromes, roof gardens, *410 music halls, race courses, skating rinks, amusement and recreation parks, trailer camps, resort camps, fairs, bowling alleys, golf courses, gymnasiums, shooting galleries, billiard and pool parlors; garages, all public conveyances operated on land or water or in the air, as well as the stations and terminals thereof; travel or tour advisory services, agencies or bureaus; public halls and public elevators of buildings and structures occupied by two or more tenants, or by the owner and one or more tenants” (emphasis added).

. The Coast Guard Auxiliary (see US Code, tit 14, §§ 821-832; see, also, 33 CFR part 5) is an adjunct of the Coast Guard comprising members who are owners of motorboats or yachts. Women are not barred from membership.