KIWANIS INTERNATIONAL

v.

RIDGEWOOD KIWANIS CLUB.

KIWANIS CLUB OF RIDGEWOOD, INC., and Julie Fletcher,

v.

KIWANIS INTERNATIONAL,

Appeal of KIWANIS INTERNATIONAL.

Nos. 86–5199 and 86–5278.

United States Court of Appeals, Third Circuit.

Feb. 11, 1987.

Sur Petition for Rehearing.

Before GIBBONS, Chief Judge, SEITZ, WEIS, HIGGINBOTHAM, SLOVITER, BECKER, STAPLETON, MANSMANN and GARTH, Circuit Judges.

Chief Judge GIBBONS, Judge HIGGINBOTHAM, Judge SLOVITER and Judge MANSMANN would grant rehearing in banc.

OPINION SUR DENIAL OF REHEARING

SLOVITER, Circuit Judge, with whom Chief Judge GIBBONS and Judge HIGGINBOTHAM join.

In a stroke of acute irony that Charles Dickens would have put to good use, this

court has decided that the Kiwanis International, which has as one of its constitutional objectives the "increase of righteousness, *justice*, patriotism, and good will," may prohibit a New Jersey Kiwanis Club from accepting a female member, despite New Jersey's enactment of a statute designed to prevent precisely that sort of discriminatory action. The panel, with the support of one-half of the active members of this court, has rejected both the petition for rehearing filed on behalf of the Ridgewood Kiwanis Club, which will now have its license agreement with Kiwanis International terminated because it accepted Julie Fletcher as a member, and the arguments contained in the brief filed by the State of New Jersey as amicus curiae, which cogently and thoroughly explains why the panel's interpretation of the New Jersey statute is flawed. In reaching its result, the panel ignored the statutory interpretation of the Division on Civil Rights of the State of New Jersey Department of Law and Public Safety, the New Jersey agency charged with administering the statute, and failed to mention, much less discuss, the most relevant opinion of the Supreme Court of New Jersey. Because of the studied refusal of the panel to consider applicable New Jersey judicial and agency interpretation, I dissent from the denial of the petition for rehearing in banc. I take this unusual step only because the panel opinion was filed without any dissent, and there is no other way to air what I believe are the serious shortcomings in the panel's analysis.

This action was initiated by Kiwanis International which sought an injunction under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, to prevent Kiwanis Ridgewood from using Kiwanis International's federally registered collective service marks because Ridgewood had admitted a female member. Ridgewood and Fletcher filed a New Jersey action seeking to enjoin Kiwanis International from terminating Ridgewood's license. Kiwanis International removed the state court action to the district court where it was consolidated with the pending Lanham Act action. The district court determined that New Jersey law should be applied to fill in the interstices in the Lanham Act which gives no direction as to interpretation of a trademark licensing agreement. 627 F.Supp. 1381, 1393–94 (D.N.J.1986). Thus, in ruling on Kiwanis International's federal action, the district court looked to the applicable state law, and held that "the New Jersey Law Against Discrimination prohibits the discriminatory policies on which the licensing agreement is conditioned, and indeed on which the revocation is based." *Id.* at 1394–95.

The panel of this court reversed. In essence, the panel holds that Kiwanis International, an association of hundreds of thousands of members, may discriminate on the basis of sex by denying membership to women and may force its unwilling New Jersey licensed clubs to do the same. The panel reaches this conclusion notwithstanding the New Jersey legislature's 1970 Amendment to its Law Against Discrimination to add a prohibition against sex discrimination.[1] That Act now reads, in relevant part: "The legislature finds and declares that practices of discrimination against any of its inhabitants, because of ... sex ... are a matter of concern to the government of the State, and that such discrimination threatens not only the rights and proper privileges of the inhabitants of the State but menaces the institutions and

---

1. It also fails to refer to the New Jersey statutory provision, enacted in 1979, that provides, in part:

    *It shall be* an unlawful employment practice, or, as the case may be, *an unlawful discrimination:*

    *l. For any person to refuse to* buy from, sell to, lease from or to, *license,* contract with, or trade with, provide goods, services or information to, or otherwise do business with *any*

other person on the basis of the race, creed, color, national origin, ancestry, age, *sex,* marital status, liability for service in the Armed Forces of the United States, or nationality of such other person or of such other person's spouse, partners, members, stockholders, directors, officers, managers, superintendents, agents, employees, business associates, suppliers, or customers.

N.J.S.A. 10:5–12(*l*) (emphasis added).

foundation of a free democratic State." N.J.S.A. 10:5–3. Furthermore, the panel gives the statutory language of the Law Against Discrimination a niggardly interpretation despite the New Jersey Superior Court's earlier comment that "[t]he law is remedial and should be read with an approach sympathetic to its objectives." *National Organization for Women, Essex County Chapter v. Little League Baseball, Inc.*, 127 N.J.Super. 522, 530, 318 A.2d 33, 37, *aff'd*, 67 N.J. 320, 338 A.2d 198 (1974) (hereafter *Little League*).

The panel's decision hinges on its finding that the Kiwanis Ridgewood Club is not a "place of public accommodation" and hence is not covered by the provision of the Law Against Discrimination that prohibits a "place of public accommodation" from denying its advantages or privileges on the basis of, *inter alia*, sex. *See* N.J.S.A. 10:5–12(f). The panel acknowledges that a Kiwanis Club is a "place". Such a construction, however awkward literally, is mandated by the New Jersey Superior Court's statement in *Little League* that, "The statutory noun 'place' (of public accommodation) is a term of convenience, not of limitation." 127 N.J.Super. at 531, 318 A.2d at 37. A Kiwanis Club is no less a "place" for purposes of the statute than is a baseball league.

Instead, the panel holds that the Kiwanis Ridgewood Club is not a place of "public accommodation" because the "evidence of membership practices and policy does not reflect an open and unrestricted invitation to the community at large to join Kiwanis Ridgewood." 806 F.2d 468, 475 (3d Cir. 1986). It reads the *Little League* case, in which the New Jersey Superior Court rejected Little League's contention that it was not a place of public accommodation, as limited by the fact that the Little League "openly invites all children in the community, with no restriction except sex, to join." *Id.* at 473.

In holding that "the test of 'place of public accommodation' is unselectivity, unrestrictedness, and open invitation," *id.* at 476, the panel misinterprets *Little League*,

fails to account for the contrary construction by the New Jersey Division of Civil Rights in two litigated cases, overlooks the statutory language which conclusively demonstrates that it has misread "public accommodation," and, perhaps most astonishing of all, fails to cite the only relevant New Jersey Supreme Court decision that ineluctably leads to a different result. Moreover, the majority of the panel failed to focus on the relevant entity, the parent organization, Kiwanis International, in making its factual decisions as to "selectivity", an issue on which the district court never ruled.

The panel's opinion is dependent upon its understanding that when the Superior Court of New Jersey stated that "Little League is a *public* accommodation because the invitation is open to the children in the community at large, with no restriction (other than sex) whatsoever," *Little League*, 127 N.J.Super. at 531, 318 A.2d at 37–38, quoted at Slip op. at 12, this meant that all groups or associations which are not open to unrestricted membership are not "public". Nothing in *Little League* so states or suggests. In fact, the opinion makes clear that even the Little League had some restrictions, which the New Jersey Superior Court alluded to, i.e. age, apparently open only to those between 8 and 12 years old, 127 N.J.Super. at 526, 318 A.2d at 35, and geography, open only to boys in communities having local leagues. *Id.* at 530, 318 A.2d at 37.

The panel, as a federal court interpreting state law, failed to give the decisions of the state agency charged with administering the statute the same deference accorded them by the New Jersey courts. *See National Surety Corp. v. Midland Bank*, 551 F.2d 21, 26 (3d Cir.1977) (this court's decision is controlled by the New Jersey court's construction of its own legislation). *See also Peper v. Princeton University Board of Trustees*, 77 N.J. 55, 69–70, 389 A.2d 465, 472 (1978) (court must give deference to agency's determination).

Decisions of New Jersey's Division on Civil Rights establish that the mere fact

that there is some selectivity in acceptance of members is not incompatible with status as a "public accommodation". In *Hinden v. United States Power Squadrons*, Division on Civil Rights, Docket No. PO2S–105 (Dec. 21, 1973), *aff'd* Docket No. A–3104–73 (App.Div.1975), *cert. den.*, 69 *N.J.* 382, 354 A.2d 310 (1975), *cert. den.*, 426 U.S. 943, 96 S.Ct. 3160, 49 L.Ed.2d 1180 (1976), AG App. at 15, the Division held that the denial of Marilyn Hinden's application for membership in the United States Power Squadrons was an act of proscribed sex discrimination in violation of the public accommodation provision of the New Jersey Law Against Discrimination, notwithstanding the fact that the Power Squadrons, a national boating organization which had local squadrons in New Jersey, did not have an "unrestricted" membership policy. On the contrary, an essential prerequisite for membership invitation was the successful completion of a basic pilot course.

Similarly, and even closer factually, is the decision of the New Jersey Administrative Law Judge that the discriminatory practices of excluding women from certain of the "selective" eating clubs of Princeton University violated the Law Against Discrimination. *See Frank v. Trustees of Princeton University*, Office of Administrative Law, Docket No. CRT 5042–85 (June 16, 1986). The ALJ based his decision on the opinion of the Director of the Division on Civil Rights which *rejected* Princeton's claim that because the eating clubs were "in their nature distinctly private," and hence not places of public accommodation, the clubs were exempt from the provisions of the New Jersey Law Against Discrimination. *See Frank v. Ivy Club*, Division on Civil Rights, Docket Nos. PL 05–1678, PL 05–1679, PL 05–1680 (Feb. 6, 1986), AG App. at 1.

These opinions make it evident that the panel's belief that "[i]t is this standard of open invitation to all that defines the content of a 'public accommodation,' and establishes the essential character of those organizations which are subject to the statute's proscriptions and those that are not," 806 F.2d at 473, is patently erroneous. It is significant that one of the underlying findings in the *Frank* case was that, "the general public is not invited to join [the three Princeton eating clubs that were respondents]." *Frank v. Ivy Club*, Division on Civil Rights, Docket Nos. PL 05–1678, PL 05–1679, PL 05–1680 (May 14, 1985).

The panel even failed to recognize that its focus only on "selectivity" as the basis for its finding that Kiwanis Ridgewood is not a "public accommodation" is contrary to the statutory definition of that phrase. The statute defines a "place of public accommodation" to include, *inter alia,* "any ... academy, college and university," N.J.S.A. 10:5–5(*l* ), and it is common knowledge that entrance to such institutions is neither unselective nor unrestricted. It is therefore evident that the New Jersey legislature did not intend that "public accommodation" would embrace only unselective and unrestricted entities, as the panel holds. The New Jersey Supreme Court has expressly recognized that Princeton University, in its role as educator, "constitute[s] a public accommodation under N.J.S.A. 10:5–5(*l* )" *Peper v. Princeton University Board of Trustees*, 77 N.J. at 67–71, 389 A.2d at 471–73. The panel decides that because Kiwanis Ridgewood has not opened its membership rolls to the "community at large" the Law Against Discrimination is inapplicable to it, even though Princeton University, which also has not done so, has been conclusively determined to be bound by that statute.

The panel recognizes that the statutory exclusion from "places of public accommodation" for any "bona fide club ... which is in its nature distinctly private," N.J.S.A. 15:5–5(*l* ), "represents the other side of the 'public accommodation' coin." 806 F.2d at 476. In other words, a club that is not "distinctly private" is, by definition, a place of public accommodation. However, in applying its rule of "selectivity" as the key to the statutory definition, the panel overlooks the ruling of the Supreme Court of New Jersey that a private swim club which accepted members only on the unanimous recommendation of a membership commit-

tee, and after a personal interview, was not "distinctly private". *Clover Hill Swimming Club v. Goldsboro,* 47 N.J. 25, 28–32, 219 A.2d 161, 163–64 (1966). The New Jersey Supreme Court ruled that the club, which in its sign and in its promotional literature consistently referred to itself as a "private" facility, was not "distinctly private" because it "sought to attract new members from the public at large" and because it "does not owe its existence to the associational preferences of its members but to the coincidence of their interest in the facilities offered by the owners." 47 N.J. at 33, 34, 219 A.2d at 165, 166. Therefore, the Court held that the club's discrimination against blacks for membership was violative of the New Jersey Law Against Discrimination.

I find it astonishing that the panel did not even attempt to distinguish *Clover Hill,* the only relevant New Jersey Supreme Court case. Nor did it denominate as clearly erroneous the district court's finding that "testimony established repeatedly that the primary function of [the Kiwanis] is not to promote camaraderie among its members, but rather to perform charitable service to the community." 627 F.Supp. at 1388. The panel merely ignores Judge Sarokin's finding. Although the Kiwanis may have some membership prerequisites, such as the International's requirement that members belong to a recognized trade or profession, or Ridgewood's requirement that members be willing to pray and say the pledge of allegiance, these do not negate the essential fact that the Kiwanis is a service organization rather than a social club.

The Supreme Court in *Roberts v. United States Jaycees,* 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984), also focused on the lack of intimacy in association among members of the Jaycees in holding that a state statute that prevented the Jaycees from discriminating against women did not violate the male members' associational rights. The panel cavalierly dismisses the *Roberts* decision as inapplicable here, because the panel's holding pretermitted its consideration of the Kiwanis members' as-

sociational rights. 806 F.2d at 473–74 n. 10. The panel overlooks that at the heart of the *Roberts* decision was the Court's consideration of the pertinent record factors, including size, purpose, policies, selectivity etc., of the Jaycees organization. *See* 468 U.S. at 620–21, 104 S.Ct. at 3250–51. The *Roberts* decision depended on the Court's conclusion that the local chapters of the Jaycees are "neither small nor selective" and that "much of the activities central to the formation and maintenance of the association involves the participation of strangers to that relationship." *Id.* at 621, 104 S.Ct. at 3251.

Just as these factors led the Supreme Court of Minnesota to rule that the Jaycees was a "place of public accommodation" within the meaning of its statute, *United States Jaycees v. McClure,* 305 N.W.2d 764 (Minn.1981), there are comparable factors as to the Kiwanis which mandate a similar holding in this case. Kiwanis International, like the Jaycees, is an educational and charitable organization which is large and essentially unselective, except insofar as its seeks to exclude women. It has 8,200 local chapters, and 313,000 individual members. 627 F.Supp. at 1383. Both groups have women at their meetings and encourage women to participate in their activities, short of membership and voting. *See Roberts,* 468 U.S. at 621, 104 S.Ct. at 3251; *Kiwanis,* 627 F.Supp. at 1384. The Kiwanis have formalized women's participation through "Kiwanianne" clubs, mostly but not exclusively for wives and widows of Kiwanis members. 627 F.Supp. at 1384. Although the Supreme Court of Minnesota apparently believed Kiwanis membership was more restrictive than the Jaycees, *see Jaycees v. McClure,* 305 N.W. at 771, the record fails to support any finding of the kind of selectivity that would justify denominating the Kiwanis clubs as "distinctly private".

The brief of the State of New Jersey in support of the petition for rehearing succinctly summarizes the record evidence with respect to Kiwanis International as follows:

[Kiwanis International]] directs its publicity and services to the public at large and not solely to its members, which is an indicia of a place of public accommodation rather than a private club. Its constitution sets minimum rather than maximum membership levels for local clubs (JA 463), and despite its claims of selectivity, it clearly promotes membership recruitment through large-scale round-ups, at which everyone who comes to the round-up is offered membership (2T43). Kiwanis literature also indicates that the International has offered awards for members who recruit large numbers of new applicants (JA 158–159). Testimony at trial also indicated that the Kiwanis spent a quarter of a million dollars on public relations efforts to promote the Kiwanis name to the public (1T176) and that the organization seeks to continually recruit members (1T179) to carry on the service activities of the organization.

Brief of the State of New Jersey as Amicus Curiae at 11 (citations omitted).

Surprisingly, only Judge Adams in his concurring opinion considered the facts with regard to Kiwanis International. Kiwanis Ridgewood is not an independent entity, since it is licensed by Kiwanis International, and its goals and membership criteria are controlled by the constitution and by-laws of Kiwanis International. Thus, the panel's failure to scrutinize the activities of Kiwanis International is inexplicable. In the *Frank* case, the New Jersey Division on Civil Rights looked to the activities of Princeton University, whose interdependent relationship to the eating clubs was analogous to that of Kiwanis International to Kiwanis Ridgewood. *Frank v. Ivy Club*, Division on Civil Rights (Feb. 6, 1986), AG App. at 6. In *Hinden*, it focused on the activity of the United States Power Squadrons, rather than the local affiliate. *Hinden v. United States Power Squadrons*, Division on Civil Rights (Dec. 21, 1973), AG App. at 16. Consideration of the record facts as to Kiwanis International makes it apparent that it could not be considered to be distinctly private.

Even were the focus only on the Kiwanis Ridgewood Club, the record does not support the "distinctly private" finding made by the panel. Ordinarily, the burden is on the party seeking exemption from the statute, *see Andersen v. Exxon Co.*, 89 N.J. 483, 493, 446 A.2d 486, 491 (1982) (employment discrimination); *see also Matter of United States Power Squadrons v. State Human Rights Appeal Board*, 59 N.Y.2d 401, 465 N.Y.S.2d 871, 452 N.E.2d 1199, 1204 (1983). The panel points to no evidence that members have joined Kiwanis Ridgewood because of their social interest in each other. For its finding of "selectivity", the panel relies on the facts that the Ridgewood Club is small, consisting of only twenty-eight members, and that its turnover is low, since no more than twenty members have been admitted in the last decade. 806 F.2d at 475. With due respect to the panel, these facts fail to suggest, much less prove, that the club is "distinctly private". Although there may have been a sponsorship requirement, the requirement of sponsorship or recommendation for applicants to the Clover Hill Swimming Club did not prevent the New Jersey Supreme Court from rejecting the claim that it was "distinctly private". *See Clover Hill*, 47 N.J. at 28–32, 219 A.2d at 163–64.

The panel points to no evidence that the Ridgewood Club purposely sought to limit its membership. In fact, the evidence was to the contrary since Ridgewood conducted a membership drive in which it sent out letters to fifty businesses seeking members, and was "continually" on the lookout for new members. *See* 806 F.2d at 475. The panel points to no evidence of "selectivity". In fact, the only relevant evidence was that no proposed member had been rejected. In sum, even were "selectivity" the only basis for determining whether an association is a "place of public accommodation", the panel points to no evidence that membership in Kiwanis Ridgewood could not be readily acquired, even by one without strong social ties to the members.

It is inconceivable to me that if Kiwanis International required its New Jersey member clubs to discriminate on the basis

of color or ethnicity, this court would give such an opprobrious policy the same judicial sanction that it gives to Kiwanis International's sex discrimination. The "stigmatizing injury" of discrimination "is surely felt as strongly by persons suffering discrimination on the basis of their sex as by those treated differently because of their race." *Roberts*, 468 U.S. at 625, 104 S.Ct. at 3253. New Jersey has declared that the "cancer of discrimination", *Jackson v. Concord Co.*, 54 N.J. 113, 124, 253 A.2d 793 (1969), applies equally to sex discrimination as to race discrimination. The panel's decision sends out a message to the contrary. It is unreasonable and unpersuasive for the panel to have placed the Kiwanis, a highly visible active organization whose purpose is "service to Youth and the Elderly, to Community and Nation," App. at 455, in the same class as the outmoded "distinctly private" mens' clubs whose members recline in overstuffed chairs with understuffed social consciences.

Could there really be any more "archaic and overbroad assumption[ ] about the relative needs and capacities of the sexes," *Roberts*, 468 U.S. at 625, 104 S.Ct. at 3253, than the testimony of the secretary of Kiwanis International that the prime function of the Kiwanis, which is to engage in service activities, would be adversely affected by admitting women members but not by having "three women members ... cooking pancakes" at a "pancake sale"? App. at 383–84. I am confident that the panel members do not share these stereotypical notions of a woman's place in modern society. Nonetheless, the panel opinion vouchsafes the insulting Kiwanis membership policy in the face of New Jersey's statute to the contrary.

There is some solace in the fact that this court's interpretation of New Jersey's Law Against Discrimination is not the last word. Someone soon may bring a similar matter before the Division on Civil Rights, where it cannot be removed to a federal court bound by the panel's precedent and where what I believe to be the New Jersey legislature's intent can be vindicated.