*190 OPINION OF THE COURT
Peter P. Rosato, J.
By way of order to show cause dated January 2, 1990, petitioner, a dentist, brings on a proceeding pursuant to section 8-110 of the Administrative Code of the City of New York to set aside and vacate respondent’s decision and order dated November 30, 1989 finding petitioner to have committed an unlawful discriminatory practice in violation of the New York City Human Rights Law in the matter entitled McCoury v Sattler (complaint No. GA-00097031688-DN).
Respondent opposes the instant petition and also brings on a cross motion to enforce the Commission’s order. Respondent has submitted an answer to the instant petition and petitioner, in turn, has answered respondent’s cross petition. Respondent has also submitted a full return including, inter alia, the minutes of the hearing held before the respondent Commission. In addition, both sidés have furnished the court with memoranda of law.
Two overriding issues are presented in this matter. First, petitioner raises a threshold jurisdictional issue as to whether petitioner’s dental office is a "place of public accommodation.” Secondly, the court must decide whether "sufficient evidence”, as the term is used in Administrative Code § 8-110, supports respondent’s determination that petitioner discriminated against complainant patient Stephen McCoury.
By way of background, and following a public hearing, the Administrative Law Judge made certain recommended findings of fact germane to the issue of whether or not petitioner’s dental office is a "place of public accommodation” as follows:
"1. Dr. Robert Sattler (hereinafter 'Respondent’) is a self-employed dentist who practices out of a one-chair dental office (T. 340, 513). This office is located at 133 East 58th Street, New York, New York (T. 340, 513). Respondent has been entirely devoted to his solo practice since the spring of 1985 (T. 348).
"2. In 1987, Respondent employed Ms. Sonia Cornier as a dental assistant and receptionist (T. 341).
"3. Respondent accepts new patients by referral from friends, relatives, colleagues and patients (T. 349-350, 515). New patients are asked by telephone how they were referred (T. 386). When patients come to the office, they are also asked to complete a Patient Health Record form (T. 371; C. Ex. 4). On this form they are again asked to indicate the source of *191 the referral (T. 374). Respondent does not accept patients who come to his office without a referral (T. 399). Respondent demands that his patients appear on time. They should be able to pay the fee and they should want good dental care (T. 360, 363, 516). Respondent does not advertise (T. 515, 517-518). Respondent’s patient screening mechanisms have not changed substantially since 1987 (T. 414-417).
"Respondent’s dental office is a business which provides services for a fee (T. 439).
"Complainant was Respondent’s patient between February 27, 1985 and May, 1987 (T. 82-83, 86, 493). Respondent considered Complainant a good patient in that he obeyed all the office rules (T. 525).
"Prior to seeing Respondent, Complainant was a patient of another dentist, Dr. Anthony Paglis. Dr. Paglis referred him to Respondent early in 1985 (T. 44-45, 78, 491).”
The Administrative Law Judge, expressly adopting the analysis set forth by the Court of Appeals in Matter of United States Power Squadrons v State Human Rights Appeal Bd. (59 NY2d 401), found that petitioner had "failed to show that his office is distinctly private.” Despite the fact that the Administrative Law Judge found that Dr. Sattler accepts new patients by referral and in fact does not accept patients who come without a referral, the Administrative Law Judge nevertheless found that Dr. Battler’s practice is "open to the public”. The Administrative Law Judge reasoned that because Dr. Battler’s sources of referral encompass "friends, colleagues, family and other patients”, there is, as a result, "no subjective limitation on the patient pool”, and therefore, the Administrative Law Judge concluded, Dr. Battler’s practice must be deemed "open, to the public”.
Respondent Commission, in its determination of November 30, 1989, adopted the findings of the Administrative Law , Judge with one exception, namely, and despite the fact that petitioner had not solicited a listing in the yellow pages, petitioner’s practice, by virtue of being so listed therein, in respondent’s view, constituted a "public listing”.
The critical question this court must now decide is whether or not sufficient evidence supports respondent’s determination of November 30, 1989 that petitioner’s office and practice is in fact a "place of public accommodation” within the meaning of Administrative Code § 8-102 (9).
At the outset, this court recognizes, as a general principle, *192 that "the construction of the statute by the agency primarily responsible for its administration is entitled to great weight.” (See, respondent’s mem citing State Div. of Human Rights v Xerox Corp., 102 AD2d 543 [4th Dept 1984], affd 65 NY2d 213; Matter of Tommy & Tina v Department of Consumer Affairs, 95 AD2d 724, affd 62 NY2d 671 [1984].) This court also recognizes that the Court of Appeals, in construing certain aspects of a nearly identical definition of "place of public accommodation” contained in the State Human Rights Law (Executive Law § 292 [9]), has held that the Legislature intended that such term be interpreted broadly. (See, Matter of United States Power Squadrons v State Human Rights Appeal Bd., 59 NY2d 401, supra.) In applying these general principles, respondent would have this court disregard or reject as unsound the case of Elstein v State Div. of Human Rights (NYLJ, Aug. 18, 1988, at 2, col 3 [Sup Ct, Onondaga County]), wherein the court vacated respondent’s determination finding probable cause that petitioner, an orthopedic surgeon and solo practitioner, had engaged in an unlawful discriminatory practice in allegedly refusing to treat an AIDS patient. Rather, respondent would have this court sustain the recommended decision and order of the Administrative Law Judge who first expressly applied the "distinctly private” exception of Power Squadrons, to the instant case, then ruled that it was petitioner’s burden to demonstrate that his office is "distinctly private” and then also ruled that petitioner herein has failed to meet this burden. This court, upon review of the relevant cases and the legislative history of the term "place of public accommodation” as contained in Administrative Code § 8-102 (9), respectfully suggests that it is respondent’s interpretation which is fundamentally unsound, inclusive of, but not limited to, the manner in which respondent seeks to apply the holding of Power Squadrons to the instant case.
In Power Squadrons (supra), the Court of Appeals affirmed a determination whereby the State Division of Human Rights found that petitioner United States Power Squadrons and certain of their local charter organizations were in fact subject to the provisions of the Human Rights Law and that petitioner had in fact unlawfully discriminated against women. In finding that petitioner fit within the definition of "place of public accommodation”, the Court of Appeals made certain key findings. First, the court found that petitioner, a nonprofit organization consisting of over 650 local squadrons and with a total membership of some 70,000 members, conducted "wide *193 spread public activities”, including "extensive educational programs” offered to "a large segment of the public” and therefore, by virtue of extending its facilities and privileges to the public, fit within the definition of "place of public accommodation”. (See, Matter of United States Power Squadrons v State Human Rights Appeal Bd., supra, at 410, 411.) In so holding, the court also found that the "place” of public accommodation need not be at a fixed location. (See, Matter of United States Power Squadrons v State Human Rights Appeals Bd., supra.)
In addition, and as an alternative argument, the petitioners in Power Squadrons (supra, at 412) further contended that they were outside the reach of the statute in that they are a "private club.” However, the Court of Appeals quite correctly pointed out that the New York State Human Rights Law does not refer simply to "private clubs” but expressly excluded from the statute’s provisions only such " 'institution, club or place of accommodation which is in its nature distinctly private. ’ ” (See, Matter of United States Power Squadrons v State Human Rights Appeal Bd., supra, at 410, quoting Executive Law § 292 [9] [emphasis added]; and see, nearly identical language contained at Administrative Code § 8-102 [9].) Utilizing a five-part test, the Court of Appeals held that the petitioners in Power Squadrons had failed to meet their "burden of establishing entitlement to exclusion * * * [as] a distinctly private’ club’’. (See, Matter of United States Power Squadrons v State Human Rights Appeal Bd., supra, at 412 [emphasis added].) However, in the view of this court, it was inappropriate for the Administrative Law Judge to have ascertained the public or private status of petitioner’s office herein under this same "distinctly private” analysis. Examination of the Administrative Law Judge’s recommended decision and order, as adopted by the Commission in its final decision and order of November 30, 1989, reveals that the definition of "public accommodation” as contained in Administrative Code § 8-102 (9) was cited in the following manner: "The Code states, in pertinent part, that 'the term "place of public accommodation * * *” shall include * * * retail stores and establishments dealing with goods or services of any kind * * *. Such term shall not include * * * any institution, club or place of accommodation which proves that it is in its nature distinctly private.’ Code Section 8-102 (9).”
The problem, as this court sees it, is that the Administrative Law Judge, in an effort to inject the "distinctly private” *194 rationale, selectively “lumped” or “telescoped” two quite separate portions of the definition together. In this court’s view, such statutory splicing, if you will, is unwarranted.
Examination of the statute, i.e., Administrative Code § 8-102 (9), shows that the words "distinctly private” modify and complete the phrase beginning with the words “any institution, club or place of accommodation”. (And see, New York State Club Assn. v City of New York, 69 NY2d 211; see also, Batavia Lodge No. 196 v New York State Div. of Human Rights, 43 AD2d 807 [4th Dept 1973], revd on other grounds 35 NY2d 143 [both involving private clubs].) Significantly, no such language is to be found in the portion of the statute dealing with “retail stores and establishments dealing with goods or services of any kind”. (See, Administrative Code § 8-102 [9].) The Administrative Law Judge’s construction of the statute simply obliterates this distinction.
The reasoning set forth by the Administrative Law Judge concerning the definition of public accommodation was equally faulty, in this court’s view, from another standpoint. The recommended decision and order of the Administrative Law Judge dated September 22, 1989, as adopted by respondent in its final decision and order dated November 30, 1989, found petitioner’s office to be a place of public accommodation as falling within that portion of the definition contained at section 8-102 (9) as referred to, in the words of the Administrative Law Judge, "establishments dealing with goods and services.” However, in referring to the latter portion of Administrative Code § 8-102 (9), the Administrative Law Judge omitted the word “retail” which is in fact the first word of the clause in question. In reality, the subject clause reads as follows: "retail stores and establishments dealing with goods or services of any kind”. (See, Administrative Code § 8-102 [9] [emphasis added].) In effect, the Administrative Law Judge simple read the word “retail” out of the statute.
Moreover, such omission, in this court’s opinion, is very critical. Two reported cases, to this court’s knowledge, have also stressed the importance of the modifying word "retail”. The most recent of these cases is Elstein v State Div. of Human Rights (NYLJ, Aug. 18, 1988, at 2, col 3 [Sup Ct, Onondaga County], supra). There, Supreme Court found that the office of petitioner, an orthopedic surgeon and solo practitioner who accepted the bulk of his patients on referral, was not "a place of public accommodation” within the meaning of Executive Law § 292 (9), the State counterpart to Administra *195 tive Code § 8-102 (9). In so holding, the court in Elstein found that petitioner’s office was "not a wholesale or retail store or establishment”. (See, Elstein v State Div. of Human Rights, supra, at 2, col 4 [emphasis added].) That is, the Elstein court did not read the subject phrase so broadly as to encompass all " 'establishments dealing with goods or services of any kind.’ ” (See, Elstein v State Div. of Human Rights, supra, at 2, col 4.) Significantly, the holding in Elstein is not without historical underpinnings. First, and most obvious, the holding of Elstein was grounded squarely upon an earlier decision of the Supreme Court, Monroe County, entitled Rochester Hosp. Serv. Corp. v Division of Human Rights of Executive Dept. (92 Misc 2d 705 [1977, Schnepp, JJ). There, in rejecting the Division’s argument that insurance companies are included within the definition of a "place of public accommodation” under Executive Law §292 (9), Judge Schnepp made the following insightful observations: "Although the division argues that insurance companies are included in the language— 'establishments dealing with goods or services of any kind’, a plain and clear reading of the statute suggests that the words 'wholesale and retail’ modify the words 'stores and establishments’. If the phrase 'establishments dealing with goods or services of any kind’ was intended to stand alone, a comma would follow the words 'stores’ and the conjunction 'and’ would be omitted. This evidences an unambiguous legislative intent to qualify and restrict the meaning and scope of 'stores and establishments’. While an insurance carrier may be an establishment providing services, it cannot be described as a 'wholesale and retail’ establishment.”[1] (See, Rochester Hosp. Serv. Corp. v Division of Human Rights of Executive Dept., supra, at 707 [emphasis added].)
In addition, the Elstein court, in holding that the words "wholesale and retail” modify the words "stores and establishments”, points out that support for such an interpretation can be found in the legislative history of the phrase, and more specifically, from section 40 of the Civil Rights Law (see, L 1960, ch 779); in fact such statute, in pertinent part, does in fact expressly include "retail stores and establishments”. (Emphasis added.) Additionally, were there any doubt that the term "retail” was intended to limit both "stores” and "estab *196 lishments”, the Historical Note which follows the State counterpart, Executive Law §292 (9) (McKinney’s Cons Laws of NY, Book 18, Executive Law § 292 [9], at 485; emphasis added), points out that the Laws of 1969 included "wholesale establishments” within the definition, thereby evincing a clear legislative intent that the terms retail and/or wholesale do in fact apply to, modify, and limit the all-encompassing term "establishments”. As petitioner’s counsel correctly observes, had the Legislature intended a completely open-ended definition of place of public accommodation, they did not need to draft a 51-line definition as is now found in Executive Law § 292 (9) and Administrative Code § 8-102 (9).
Respondent’s reliance on Matter of Hurwitz v New York City Commn. on Human Rights (142 Misc 2d 214 [Sup Ct, NY County 1988, Gammerman, J.]) is also misplaced. The Hurwitz court essentially held that the jurisdiction of the New York City Human Rights Commission vis-á-vis a claim of alleged discrimination against a dentist was not preempted by the State Education Law, which essentially regulates the practice of dentistry in New York State. The Hurwitz court simply did not reach the merits of whether or not a dental office was a "place of public accommodation” under Administrative Code § 8-102 (9).
Nor, in this court’s view, does the case of Dimiceli & Sons Funeral Home v New York City Commn. on Human Rights (NYLJ, Jan. 14, 1987, at 7, col 3 [Sup Ct, NY County, Schackman, J.]) provide meaningful support for respondent’s position. The court in Dimiceli equated petitioner’s funeral home with nonsectarian cemeteries, into which, the court noted, " 'all of us, at one time or another, will be entrusted’ ”. (See, Dimiceli & Sons Funeral Home v New York City Commn. on Human Rights, supra, at 12, col 2.) Thus, the Dimiceli court found that petitioner’s funeral home was in fact within the "public domain” and thereby constituted a "place of 'public accommodation’ ”. (See, Dimiceli & Sons Funeral Home v New York City Commn. on Human Rights, supra, at 12, col 2.) The Dimiceli court went on to find that petitioner’s funeral home also fell within the definition of " 'an establishment dealing with goods and services’ ”. (See, Dimiceli & Sons Funeral Home v New York City Commn. on Human Rights, supra, at 12, col 1.) The instant case is quite distinguishable. The type of care and services provided by petitioner’s dental office is obviously highly dissimilar to the type of care and services provided by a funeral parlor. Beyond that, however, the *197 Dimiceli case only serves to perpetuate the same fundamental error of statutory construction by speaking in terms of "establishments dealing with goods and services”, while omitting the critical modifying word "retail”. Thus, to the extent respondent seeks to rely on Dimiceli, such reliance is unavailing.
Aside from the fact that respondent’s determination, in this court’s view, rests on an unsound construction of the relevant Administrative Code provisions, the facts of the instant case all inexorably lead to the conclusion that petitioner’s office is not, as a factual matter, a place of public accommodation. The Administrative Law Judge found, and it is essentially unchallenged, that petitioner takes patients by referral only. The Administrative Law Judge further found that while he is listed in the telephone directory, he does not advertise through the directory or by any other means.[2] Yet the Administrative Law Judge, in findings confirmed by the full Commission, nonetheless concluded that the sources, or the "pool” from which petitioner’s referrals are drawn, i.e., friends, family, colleagues, and existing patients, is so large and undifferentiated as to be tantamount to no selectivity at all and therefore the office should be deemed to be open to the public-at-large. However, such a conclusion is directly at odds with the facts of this case. Simply stated, the testimony at the public hearing shows that a person cannot simply walk into petitioner’s office unannounced, off the street. The uncontroverted testimony at the public hearing, as introduced by petitioner’s most recent dental assistant, Ms. Pat Dicrescento, as well as by petitioner himself, was that the door to petitioner’s fifth-floor office remains locked at all times and that patients are only admitted when petitioner or his assistant lets them in. Upon making an appointment for a new patient, Ms. Dicrescento testified that, upon petitioner’s instruction, she would enter their name and phone number in the appointment book with the notation "NP” (for new patient) along with the name of the individual who made the referral. Two situations, the subject of unrefuted testimony in the record, serve to illustrate just how stringently petitioner adheres to the referral-only format.
Ms. Dicrescento testified at the public hearing that on one occasion some two months prior to the public hearing, an *198 elderly man not referred to petitioner by anyone came to the door of petitioner’s office in hopes of obtaining dental services. When Ms. Dicrescento inquired as to how he had found the office, the elderly gentleman answered that he had seen Dr. Battler’s name in the directory located in the lobby of the building. Ms. Dicrescento testified that she informed the man that an appointment was not possible as petitioner did not "accept patients who just walk in off the street”. The unidentified elderly man was not permitted entrance into the office.
An even more telling illustration of just how strictly petitioner adhered to his referral-only policy was revealed at a later point of the hearing. Ms. Dicrescento, who had been petitioner’s dental assistant for some five months prior to her testimony at the public hearing in July 1989, testified that sometime in May of 1989, just a few short weeks prior to the start of the public hearing herein, she received a telephone call from a woman who identified herself as "Nancy McKensie”. In response to Ms. Dicrescento’s question as to who had referred her, Ms. McKensie informed petitioner’s dental assistant that she was on "sabbatical from Poughkeepsie”. She further stated that she saw petitioner’s name in the yellow pages and, noticing that his office was near where she lived, she would like to set up an appointment. Although a little hesitant, Ms. Dicrescento, being relatively new at her job, made an appointment for Miss McKensie, denoting "YP” (for yellow pages) next to her name in the appointment book. However, the next day, when petitioner, as was his practice, inquired of Ms. Dicrescento as to any new appointments, petitioner immediately directed Ms. Dicrescento to cancel Ms. McKensie’s appointment, which she proceeded to do, since the office does not accept patients through the yellow pages. In point of fact, respondent conceded at the public hearing that the female caller was in fact a "tester”, an agent of respondent’s office who, at respondent’s behest, deliberately contacted petitioner’s office for the express purpose of gaining an appointment without referral, thereby dramatizing the purported "public” nature of the office. As the record reflects, however, petitioner did not take the "bait”.[3]
*199 Thus, for all the above-stated reasons, this court would find that respondent’s threshold determination that petitioner’s office constitutes a place of public accommodation lacks sufficient, i.e., substantial, evidence in the record. (See, Matter of State Div. of Human Rights [Granelle] 70 NY2d 100; 300 Gramatan Ave. Assocs. v State Div. of Human Rights, 45 NY2d 176, 181; Matter of Pace Coll. v Commission on Human Rights, 38 NY2d 28, 35.) Thus, this court would find that respondent lacks jurisdiction over petitioner’s office under Administrative Code § 8-102 (9). Were this court to find otherwise, on the facts of this case, few, if any, dental offices or, for that matter, professional offices of any kind would fall outside of respondent’s reach.
[Portions of opinion omitted for purposes of publication.]

. Interestingly, Administrative Code of the City of New York § 8-102 (9) speaks only in terms of retail stores and establishments, whereas its State counterpart, Executive Law § 292 (9), speaks in terms of both wholesale and retail stores and establishments.

. Petitioner’s fifth-floor office at 133 East 58th Street is also listed on a sign, along with the names of numerous other tenants, in the lobby of his multistory building.

. The only possible exception to this strict referral-only policy to which petitioner’s attention was directed was a notation contained in petitioner’s appointment book for a "walk-in” on July 16, 1987, a correction officer at Sing Sing Correctional Facility, who, petitioner explained, was apparently seeing an allergist on his floor. On the day in question, petitioner recalled that one of the nurses from the allergy clinic actually walked this correction *199 officer over to petitioner’s office. Petitioner could not recall whether or not the correction officer had made an appointment ahead of time. Even assuming, however, that no prior appointment had been made for this individual, the appointment still appears to be something of a hybrid situation in that one of petitioner’s patients, a nurse at the allergy clinic, was in a sense "referring” their patient over to petitioner.