444 ‘S.E.2d 39

Major General Joseph J. SKAFF, Secretary of the West Virginia Department of Public Safety; William Duncil, Warden, Huttonsville Correctional Center; and William Iseli, Captain, Huttonsville Correctional Center, Appellants,

v.

WEST VIRGINIA HUMAN RIGHTS COMMISSION, William Hawkins and Alonzo Pendleton, Appellees.

No. 21869.

Supreme Court of Appeals of West Virginia.

Submitted March 8, 1994.

Decided April 20, 1994.

Rita A. Stuart, Sp. Asst. Atty. Gen., Div. of Corrections, Charleston, for appellants.

Darrell V. McGraw, Jr., Atty. Gen., Paul R. Sheridan, Sr. Asst. Atty. Gen., Civ. Rights Div., Charleston, for appellee the W.Va. Human Rights Com'n.

Franklin D. Cleckley, Morgantown, for amicus curiae, W.Va. State Branches of the NAACP.

Daniel F. Hedges, Charleston, for appellees William Hawkins and Alonzo Pendleton.

MILLER, Justice:

In this appeal, we are asked to determine whether the West Virginia Human Rights Commission (HRC) has jurisdiction to accept complaints of racial discrimination by inmates in the State's penal institutions. The appellants are several officials authorized by law to administer our penal institutions. They appeal an adverse ruling of the HRC holding that it does have jurisdiction.

The basis for the HRC's assumption of jurisdiction was its belief that the State's penal institutions are places of public accommodations, as defined in W.Va.Code, 5–11–3(j) (1992).[1] If these institutions are places of public accommodations, then the HRC reasoned that under W.Va.Code, 5–11–9(6)(A) (1992),[2] racial discrimination is not permitted.

The underlying complaint before the HRC was filed on behalf of two black inmates at the Huttonsville Correctional Center. It alleges that the prison administration does not protect black inmates from physical violence inflicted by white inmates who belong to a supremacist group called the Aryan Brotherhood.

In our cases dealing with The West Virginia Human Rights Act, W.Va.Code, 5–11–1, et seq. (1967), we recognized that the legislature's declaration of policy contained in W.Va.Code, 5–11–2 (1989),[3] is both broad and beneficial. Moreover, as we stated in Syllabus Point 1, in part, of Paxton v. Crabtree, 184 W.Va. 237, 400 S.E.2d 245 (1990): "The West Virginia Human Rights Act 'shall be liberally construed to accomplish its objective and purpose.' W.Va.Code, 5–11–15 (1967)."[4]

1. W.Va.Code, 5–11–3(j), states: "The term 'place of public accommodations' means any establishment or person, as defined herein, including the state, or any political or civil subdivision thereof, which offers its services, goods, facilities or accommodations to the general public, but shall not include any accommodations which are in their nature private[.]"

2. W.Va.Code, 5–11–9(6)(A), provides:

"It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, or except where based upon applicable security regulations established by the United States or the state of West Virginia or its agencies or political subdivisions:

\* \* \*

"(6) For any person being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodations to:

"(A) Refuse, withhold from or deny to any individual because of his race, religion, color, national origin, ancestry, sex, age, blindness or handicap, either directly or indirectly, any of the accommodations, advantages, facilities, privileges or services of such place of public accommodations[.]"

3. W.Va.Code, 5–11–2, states:

"It is the public policy of the state of West Virginia to provide all of its citizens equal opportunity for employment, equal access to places of public accommodations, and equal opportunity in the sale, purchase, lease, rental and financing of housing accommodations or real property. Equal opportunity in the areas of employment and public accommodations is hereby declared to be a human right or civil right of all persons without regard to race, religion, color, national origin, ancestry, sex, age, blindness or handicap. Equal opportunity in housing accommodations or real property is hereby declared to be a human right or civil right of all persons without regard to race, religion, color, national origin, ancestry, sex, blindness, handicap, or familial status.

"The denial of these rights to properly qualified persons by reason of race, religion, color, national origin, ancestry, sex, age, blindness, handicap, or familial status is contrary to the principles of freedom and equality of opportunity and is destructive to a free and democratic society."

4. W.Va.Code, 5–11–15, states:

"The provisions of this article shall be liberally construed to accomplish its objectives and purposes. If any provision of this article be held invalid or unconstitutional by any

The parties do not appear to disagree that the statutory definition of the term "place of public accommodations" does include the "state, or any political or civil subdivision thereof[.]" W.Va.Code, 5–11–3(j). Where the disagreement arises is whether a State penal institution "offers its services, goods, facilities or accommodations to the general public" and the subsidiary phrase in W.Va. Code, 5–11–3(j), which excludes "any accommodations which are in their nature private[.]"[5]

In several cases, we have discussed several attributes of an entity or facility that may be a public facility as defined in the public accommodations section of the Act. In *Shepherdstown Volunteer Fire Department v. West Virginia Human Rights Commission*, 172 W.Va. 627, 309 S.E.2d 342 (1983), we pointed to the fact that volunteer fire departments were statutorily authorized and received public funding. Our focus in *Israel v. Secondary Schools Activities Commission*, 182 W.Va. 454, 388 S.E.2d 480 (1989), was whether this statutorily created commission was conducting any type of public activity that could deem it a place of public accommodations. We reviewed cases from other jurisdictions and concluded that one of the essential ingredients of a place of public accommodations was that the facility allows participation to unscreened and unselected members of the public.[6]

These cases point to the conclusion that a place of public accommodations must be open to members of the public. Indeed, this distinction often is drawn between a place of public accommodations and a private club. The hallmark of a private club is its selectivity and exclusivity in obtaining its members. *See Roberts v. United States Jaycees*, 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984); *Wright v. Salisbury Club, Ltd.*, 632 F.2d 309 (4th Cir.1980); *United States v. Trustees of Fraternal Order of Eagles, Milwaukee Aerie No. 137*, 472 F.Supp. 1174 (E.D.Wis.1979); *Kiwanis Club of Great Neck, Inc. v. Board of Trustees of Kiwanis Int'l*, 41 N.Y.2d 1034, 395 N.Y.S.2d 633, 363 N.E.2d 1378, *cert. denied*, 434 U.S. 859, 98 S.Ct. 183, 54 L.Ed.2d 132 (1977).[7] In *Roberts, supra,* the Supreme Court made this summary as to why a claim of being a private organization exemption could not be sustained: "In short, the local chapters of the Jaycees are neither small nor selective. Moreover, much of the activity central to the formation and maintenance of the association involves the participation of strangers to that relationship." 468 U.S. at 621, 104 S.Ct. at 3251, 82 L.Ed.2d at 474.[8]

When we apply the foregoing to inmates in the State's penal institutions, it is apparent that they are not members of the general public. Their criminal convictions and incarcerations seriously curtail the civil liberties which ordinarily are afforded the public at large. Moreover, because members of the general public are excluded, the inmates' place of confinement cannot be deemed a

court of competent jurisdiction, such invalidity or unconstitutionality shall not affect or invalidate the other provisions hereof, all of which are declared and shall be construed to be separate and severable."

**5.** For the full text of the place of public accommodations definition, see note 1, *supra.*

**6.** *See, e.g., United States Jaycees v. McClure*, 305 N.W.2d 764 (Minn.1981); *National Org. for Women v. Little League Baseball, Inc.*, 127 N.J.Super. 522, 318 A.2d 33, *aff'd mem.*, 67 N.J. 320, 338 A.2d 198 (1974); *United States Power Squadrons v. State Human Rights Appeal Bd.*, 59 N.Y.2d 401, 465 N.Y.S.2d 871, 452 N.E.2d 1199 (1983).

**7.** The private club exemption is contained in W.Va.Code, 5–11–3(j), which excludes "any accommodations which are in their nature private[.]" *See* note 1, *supra,* for the full text of subsection (j).

**8.** In *Roberts, supra,* the Supreme Court recognized that the United States Constitution does afford protection for freedom of association for private organizations. However, it rather narrowly defined the characteristics:

"Among other things, therefore, they are distinguished by such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship. As a general matter, only relationships with these sorts of qualities are likely to reflect the considerations that have led to an understanding of freedom of association as an intrinsic element of personal liberty." 468 U.S. at 620, 104 S.Ct. at 3250–51, 82 L.Ed.2d at 472–73.

public accommodation. There is no unscreened or unselected membership that is able to utilize the facility which we found in *Israel* to be characteristic of a place of public accommodations.[9]

The only case from any other jurisdiction that appears to be analogous is *Blizzard v. Floyd,* 149 Pa.Cmwlth. 503, 613 A.2d 619 (1992), decided under the Pennsylvania Human Relations Commission Act which contained a public accommodations provision similar to ours.[10] The court concluded that the Act did not apply, reasoning:

> "Although a state correctional institution is a Commonwealth facility, it does not accept or solicit the patronage of the general public. Moreover, a common theme runs throughout the Act's definition of a public accommodation which is to provide a benefit to the general public allowing individual members of the general public to avail themselves of that benefit if they so desire. Moreover, since the purpose of a correctional institution is to incarcerate persons convicted of crime or awaiting trial or sentence, inmates do not enjoy the privilege of leaving the facility at will. It is therefore clear that a state correctional institution is not a public accommodation as defined by the Act." 613 A.2d at 621.

■ We conclude that the State's penal institutions are not places of public accommodations under W.Va.Code, 5–11–3(j), for prisoners housed therein. Therefore, their claims of discrimination are not under the jurisdiction of the Human Rights Commission. Inmates are not, however, without relief.

■ In *Hackl v. Dale,* 171 W.Va. 415, 299 S.E.2d 26 (1982), we recognized that a writ of habeas corpus would lie to challenge conditions of confinement, stating in Syllabus Point 2:

> "A prisoner has a right, secured by the Eighth and Fourteenth Amendments, to

be reasonably protected from constant threat of violence and sexual assault by his fellow inmates, and he need not wait until he is actually assaulted to obtain relief. In order to meet the foregoing standard two conditions must be shown: (1) Whether there is a pervasive risk of harm to inmates from other prisoners, and, if so, (2) whether the officials are exercising reasonable care to prevent prisoners from intentionally harming others or from creating an unreasonable risk of harm."

In *Hackl,* we cited federal cases that dealt with violence in penal institutions and granted relief to the inmates by requiring prison officials to provide adequate protection to the assaulted or threatened inmates. *See, e.g., Withers v. Levine,* 615 F.2d 158 (4th Cir. 1980), *cert. denied,* 449 U.S. 849, 101 S.Ct. 136, 66 L.Ed.2d 59 (1980); *Holt v. Sarver,* 442 F.2d 304 (8th Cir.1971). This same relief has been granted in more recent cases.

For example, in *LaMarca v. Turner,* 995 F.2d 1526 (11th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994), the court found that prison officials knew that there was a lack of security and, as a result, inmates were physically and sexually assaulted. It affirmed the lower court's injunctive relief and recognized the right to damages for those inmates who were assaulted. The court of appeals outlined the elements of such a cause of action:

> "To prevail on their Eighth Amendment claim for damages brought under section 1983, the plaintiffs must prove three elements: (1) a condition of confinement that inflicted unnecessary pain or suffering, *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 [, 69] (1981), (2) the defendant's 'deliberate indifference' to that condition, *Wilson v. Seiter,* [501] U.S. [294, 303], 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 [, 281] (1991), and (3) causation, *Williams v. Bennett,* 689 F.2d 1370, 1389–90 (11th Cir.1982) [*cert. denied,*

---

9. It might be argued that the State, by establishing its criminal laws, has defined a class of exclusivity and selectivity of persons, i.e., those convicted, to be members of our penal institutions. Thus, the argument would be that they are the functional equivalent of private clubs and excluded from the Act.

10. In relevant part, a place of public accommodations included "'all Commonwealth facilities, and services, including such facilities and services of all political subdivisions thereof, but shall not include any accommodations which are in their nature distinctly private.'" 613 A.2d at 620–21 *quoting* Pa.Stat.Ann. tit. 43, § 954(*l*) (1986). (Emphasis omitted).

464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983)]. For our purposes, the Eighth Amendment defines the contours of the first two elements and section 1983 delimits the third." 995 F.2d at 1535. (Footnotes omitted).

*See also Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986) (no recovery for simple negligence); *Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) (reckless disregard); *Hendricks v. Coughlin,* 942 F.2d 109 (2d Cir.1991); *Frett v. Government of Virgin Islands,* 839 F.2d 968 (3d Cir.1988); *Walker v. Norris,* 917 F.2d 1449 (6th Cir.1990); *Wright v. Jones,* 907 F.2d 848 (8th Cir.1990); *Benny v. Pipes,* 799 F.2d 489 (9th Cir.1986), *amended on other grounds,* 807 F.2d 1514 (9th Cir.1987), *cert. denied,* 484 U.S. 870, 108 S.Ct. 198, 98 L.Ed.2d 149 (1987). Moreover, in *Santiago v. Miles,* 774 F.Supp. 775 (W.D.N.Y.1991), Hispanic and black inmates were granted Section 1983 injunctive relief against prison officials on their claim of racial discrimination in housing, job assignments, and discipline.

In *Mitchem v. Melton,* 167 W.Va. 21, 277 S.E.2d 895 (1981), we recognized that state courts have been given concurrent jurisdiction to handle suits by prison inmates under 42 U.S.C.A. § 1983.[11] We reviewed several United States Supreme Court cases [12] and pointed out in Syllabus Points 1 and 2 of *Mitchem* that this type of action can be used by inmates to challenge the conditions of confinement:

**11.** 42 U.S.C.A. § 1983 provides, in relevant part:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

**12.** *E.g., Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

**13.** Since we accepted this case, the legislature adopted Senate Bill 117 on March 9, 1994, effec-

"1. Ordinarily an action under 42 U.S.C.A. § 1983 is appropriate where complaint is made to the conditions of confinement and not its duration.

"2. An action based on 42 U.S.C.A. § 1983 can be maintained in our State courts to challenge prison conditions."

Consequently, the inmates in this case are not without available remedies in the court system to obtain the relief sought.[13] For the foregoing reasons, we reverse the judgment of the Human Rights Commission.

Reversed.

tive from that date. The bill was signed by the Governor on March 25, 1994. It amended the definition of a "place of public accommodations" contained in W.Va.Code, 5–11–3(j), by adding this language:

"To the extent that any penitentiary, correctional facility, detention center, regional jail or county jail is a place of public accommodation, the rights, remedies and requirements provided by this article for any violation of subdivision (6), section nine of this article shall not apply to any person other than: (1) Any person employed at a penitentiary, correctional facility, detention center, regional jail or county jail; (2) any person employed by a law enforcement agency; or (3) any person visiting any such employee or visiting any person detained in custody at such facility[.]"

The reference to subdivision (6) refers to W.Va. Code, 5–11–9(6). Its applicable language is set out in note 2, *supra.*