# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Malcolm David Setser, Personal Representative**
**for the Estate of Kedron Eugene Setser,**
**Plaintiff Below, Petitioner**

**FILED**

April 10, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 14-0680** (Boone County 12-C-174)

**Alaina Harvey, John Workman, Boone County**
**Sheriff's Department, and the Boone County**
**Commission, Defendants Below, Respondents**

## MEMORANDUM DECISION

Petitioner Malcolm David Setser ("petitioner"), personal representative of the estate of his son, Kedron Eugene Setser ("Kedron Setser" or "Mr. Setser"), by counsel Peter A. Hendricks and Lonnie C. Simmons, appeals the order of the Circuit Court of Boone County, entered on April 28, 2014, dismissing his complaint for failure to state a claim upon which relief could be granted. Respondent Alaina Harvey (a probation officer with Boone County Probation Services), appears by counsel John M. Hedges and Stephanie J. Shepherd. Respondents John Workman (a home incarceration officer and deputy sheriff with Boone County Sheriff's Department), Boone County Sheriff's Department, and Boone County Commission appear by counsel Gary E. Pullin and Christopher C. Ross.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

For the purposes of the appeal before us, we take the facts set forth in petitioner's complaint as true. Kedron Setser was serving a probationary term of home confinement pursuant to two separate pleas to the felonies of wanton endangerment and conspiracy. While on home confinement, Mr. Setser was supervised by the Boone County Home Confinement Office, a division of the Boone County Sheriff's Department. According to the circuit court's probation order, Mr. Setser was required to submit to random drug and alcohol screening and had to provide samples within two hours of a request from his probation officer or home incarceration officer. It is undisputed that Kedron never requested modification of the term requiring him to submit a sample within two hours.

Respondents Harvey and Workman requested a sample from Mr. Setser on September 13, 2011, and Mr. Setser reported to the Boone County Day Report Center, but did not provide the

1

sample, though he tried to comply and drank multiple glasses of water while at the center. Mr. Setser was sent home after five hours, but was arrested the following day, at which time the arresting officer obtained a urine sample which was determined to be "clean." Two days later, petitioner delivered a note, written on a prescription form of a practitioner at Wharton Medical Center to Respondent Workman stating that Kedron had cauda equina syndrome, a condition that "prevents adequate urinary control" and he "needs to have alternative methods of urinary drug testing allowed." The next day, September 16, 2011, an assistant prosecuting attorney filed a petition for revocation of Mr. Setser's probation and home incarceration. Mr. Setser committed suicide in his cell at the Southwestern Regional Jail on September 20, 2011.

Petitioner filed a complaint in the Circuit Court of Boone County on August 1, 2012, asserting a violation of Mr. Setser's state constitutional rights ("state constitutional tort"); disability discrimination under the provisions of the West Virginia Human Rights Act, leading to wrongful incarceration and wrongful death; and failure to reasonably accommodate a disability, also under the West Virginia Human Rights Act. Petitioner alleged in the complaint that respondents were aware (from the experience of supervising Mr. Setser and based on medical records delivered in August of 2011) that Mr. Setser had cauda equina syndrome and that it was extremely difficult for him to provide a urine sample "on demand." Petitioner stated that Mr. Setser learned for the first time on September 13, 2011, that alternative methods of sample collection could be used if certification of medical necessity was provided. Petitioner also alleged that Mr. Setser's family advised respondents that Mr. Setser was in need of a number of prescription medications, but respondents made no effort to ensure that he received those medications while incarcerated.

Upon the filing of the complaint, Respondent Harvey filed a motion to dismiss, and Respondents Workman, Boone County Sheriff's Office, and Boone County Commission filed a separate motion to dismiss, all pursuant to Rule 12(b)(6). The circuit court granted the motions, dismissing all of petitioner's claims. According to the circuit court's order, the court found that respondent had no authority over the regional jail policies, and had no duty to monitor Mr. Setser while he was incarcerated. It further found that Mr. Setser's suicide was not foreseeable by these respondents. The court further found that respondents "are not a place of public accommodations" that would trigger application of the West Virginia Human Rights Act. This appeal followed.

On appeal, petitioner asserts two assignments of error. To summarize, first he argues that the circuit court erred in dismissing his complaint because respondents had knowledge that Kedron Setser was incapable of providing a urine sample on demand, and in spite of this knowledge caused him to be wrongfully incarcerated for failure to provide a urine sample, thereby actually causing the suicide. He argues, second, that the circuit court erred in dismissing the complaint because respondents are a "place of public accommodations" under the definition provided in West Virginia Human Rights Act, West Virginia Code § 5-11-3(j), and are therefore liable for discrimination prohibited by that act.

This Court has explained that "[t]he purpose of a motion under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure is to test the sufficiency of the complaint. A trial court considering a motion to dismiss under Rule 12(b)(6) must liberally construe the complaint so as

to do substantial justice." *Cantley v. Lincoln County Comm'n*, 221 W.Va. 468, 470, 655 S.E.2d 490, 492 (2007). "Since the preference is to decide cases on their merits, courts presented with a motion to dismiss for failure to state a claim construe the complaint in the light most favorable to the plaintiff, taking all allegations as true." *Sedlock v. Moyle*, 222 W.Va. 547, 550, 668 S.E.2d 176, 179 (2008). Therefore, "[t]he trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)." Syl. Pt. 3, *Chapman v. Kane Transfer Co., Inc.*, 160 W.Va. 530, 236 S.E.2d 207 (1977). This Court's review of a circuit court's dismissal of a complaint pursuant to Rule 12(b)(6) is plenary. In other words, "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995).

In support of his first assignment of error, petitioner argues that a jury should decide the issue of whether the asserted violations of Kedron Setser's constitutional and statutory rights actually caused his suicide. Petitioner puts forth this claim under *Moats v. Preston County Commission*, 206 W.Va. 8, 521 S.E.2d 180 (1999), wherein we wrote:

> Although negligence actions seeking damages for the suicide of another have generally been barred because the act of suicide is considered deliberate and intentional, and therefore, an intervening act that precludes a finding that the defendant is responsible, courts have allowed such actions where the defendant is found to have actually caused the suicide or where the defendant is found to have had a duty to prevent the suicide from occurring. *McLaughlin v. Sullivan*, 123 N.H. 335, 461 A.2d 123, 124-25 (1983). *See also* Comment, Civil Liability for Causing or Failing to Prevent Suicide, 12 Loy.L.A.L.Rev. 967, 968 (1979).

*Id*. at 16, 521 S.E.2d at 188.[1] In this excerpt, we explained the direction of other courts with regard to the two exceptions described therein, and then went on to adopt the exception that

---

[1] Petitioner characterizes this statement as our holding in *Moats*. Our syllabus in that case provides, in part:

> Recovery for wrongful death by suicide may be possible where the defendant had a duty to prevent the suicide from occurring. In order to recover, the plaintiff must show the existence of some relationship between the defendant(s) and the decedent giving rise to a duty to prevent the decedent from committing suicide. Generally, such relationship exists if one of the parties, knowing the other is suicidal, is placed in the superior position of caretaker of the other who depends upon that caretaker either entirely or with respect to a particular matter.

Syl. Pt. 6, *Moats*, 206 W.Va. at 10, 521 S.E.2d at 182. This is our original syllabus point announcing an important new point of law decided in the case. *See* Syl. Pt. 1, *State v. McKinley*, 234 W.Va. 143, ___, 764 S.E.2d 303, 306 (2014).

allows recovery where a plaintiff has shown "the existence of some relationship between the defendant(s) and the decedent giving rise to a duty to prevent the decedent from committing suicide." Syl. Pt. 6, *id*. at 10, 521 S.E.2d at 182. We have not explicitly stated that a plaintiff could recover based on a cause of action for wrongful death by suicide under the first exception, "where the defendant is found to have actually caused the suicide." *Id*. We see no reason to consider whether we would adopt that exception into our jurisprudence under the facts asserted in the complaint before us.

The complaint reveals that Mr. Setser had been required to submit to random drug and alcohol testing as early as April of 2007, and that the effects of his condition of cauda equina syndrome had generally, if not specifically, been raised with the circuit court. Petitioner further asserts that, subsequent to the beginning of the term of home confinement that is relevant to this case, Mr. Setser was called upon in July of 2011 to provide a urine sample and though he "had difficulty," he ultimately provided the sample in the allotted two-hour time frame. Though petitioner alleges that respondents "did not inform [him or Mr. Setser] of any alternative methods for drug testing," it is undisputed that Mr. Setser never sought relief from the circuit court, which had entered the probationary terms and conditions in the first place. Respondents did not request a urine sample again until the incident that occurred in September of 2011, and only after Mr. Setser was incarcerated for violating the terms and conditions of his home confinement did respondents receive a note, purportedly from Mr. Setser's treating physician, stating that Mr. Setser "needs to have alternative methods of urinary drug testing allowed." In consideration of the complaint before us, we find that petitioner can prove no set of facts which would entitle him to relief, and we find no error in the circuit court's dismissal of the complaint on this issue.

We turn to petitioner's second assignment of error. He argues that Mr. Setser was a qualified person with a disability and respondents are "places of public accommodation[s that] failed to reasonably accommodate his disability." The question presented is whether respondents are "place[s] of public accommodations" under the West Virginia Human Rights Act, W.Va. Code § 5–11–1, *et seq*., and thereby subject to the provisions of W.Va. Code § 5–11–9(f)(1). The relevant term is defined in W.Va. Code § 5–11–3(j):

> The term "place of public accommodations" means any establishment or person, as defined herein, including the state, or any political or civil subdivision thereof, which offers its services, goods, facilities or accommodations to the general public, but shall not include any accommodations which are in their nature private. To the extent that any penitentiary, correctional facility, detention center, regional jail or county jail is a place of public accommodation, the rights, remedies and requirements provided by this article for any violation of subdivision (6), section nine of this article shall not apply to any person other than: (1) Any person employed at a penitentiary, correctional facility, detention center, regional jail or county jail; (2) any person employed by a law-enforcement agency; or (3) any person visiting any such employee or visiting any person detained in custody at such facility[.]

In *Skaff v. West Virginia Human Rights Commission*, 191 W.Va. 161, 444 S.E.2d 39 (1994), we considered the former iteration of this definition (which did not specifically exclude

4

the detained persons as set forth in the current definition) to determine whether state penal institutions are places of public accommodation for purposes of the West Virginia Human Rights Act. We explained that, in prior jurisprudence, "[w]e reviewed cases from other jurisdictions and concluded that one of the essential ingredients of a place of public accommodations was that the facility allows participation to unscreened and unselected members of the public." *Id.* at 163, 444 S.E.2d at 41 (*citing Israel v. Secondary Sch. Activities Comm'n*, 182 W.Va. 454, 388 S.E.2d 480 (1989)). We went on:

> When we apply the foregoing to inmates in the State's penal institutions, it is apparent that they are not members of the general public. Their criminal convictions and incarcerations seriously curtail the civil liberties which ordinarily are afforded the public at large. Moreover, because members of the general public are excluded, the inmates' place of confinement cannot be deemed a public accommodation. There is no unscreened or unselected membership that is able to utilize the facility which we found in *Israel* to be characteristic of a place of public accommodations.

*Id.* at 163-64, 444 S.E.2d at 41-42. This rationale applies with equal force to individuals confined to their homes by court order for having committed a "delinquent act." *See* W.Va. Code § 62-11B-2 (2014). Mr. Setser did not present from the "general public" seeking the services of respondents. He avoided institutional incarceration through the discretion of the circuit court, and would not otherwise have been subject to respondents' monitoring. We find no error in the circuit court's dismissal of the complaint on this ground.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** April 10, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISSENTING:**

Justice Robin Jean Davis